## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| EVELYN COBB, | ) | |
| | ) | **No. 11 CV 8847** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | **December 6, 2012** |
| Defendant. | ) | |

### MEMORANDUM OPINION and ORDER

Evelyn Cobb seeks review of the final decision of the Commissioner of Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), 42 U.S.C. §§ 423(d)(2), 1382c(a). Cobb asks the court to reverse the Commissioner's decision and award her benefits, or in the alternative, to remand the case for further proceedings. For the following reasons, Cobb's motion for summary judgment is granted insofar as it requests a remand.

### Procedural History

Cobb applied for DIB and SSI on January 6, 2009, alleging that she became disabled on October 8, 2008, as a result of degenerative arthritis. (Administrative Record ("A.R.") 32-35.) The Commissioner denied her applications on April 16, 2009, and again on reconsideration on August 24, 2009. (Id. at 37-43.) Cobb thereafter requested and received a hearing before an administrative law judge ("ALJ") on September 2, 2010. (Id. at 49-53, 66-72.) The ALJ conducted the hearing by video. (Id. at 24-31.) On November 24, 2010,

the ALJ issued a decision finding Cobb not disabled. (Id. at 13-20.) The Appeals Council denied Cobb's request for review on August 10, 2010 (id. at 1-3), making the ALJ's decision the final decision of the Commissioner, *see Shauger v. Astrue*, 675 F.3d 690, 695 (7th Cir. 2012). Cobb initiated this civil action for judicial review of the Commissioner's final decision, 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of this court, *see* 28 U.S.C. § 636(c).

## Background

### A.    Medical Evidence

Cobb, who is 58 years old, suffers from degenerative arthritis. The record demonstrates that she has sought medical treatment for this condition and also for pain that she experiences in her neck, both feet, knees, hips, and lower back. (A.R. 247-49, 251-52, 254, 257.) A 2005 MRI revealed minimal degenerative changes at the C4/C5, C5/C6, and C6/C7 disk spaces and encroachment on the intervertebral foramina at the C4/C5 level. (Id. at 260.) In December 2008 an MRI of Cobb's lumbosacral spine, bilateral hips, knees, and feet showed minimal degenerative changes but no evidence of fracture or dislocation. (Id. at 198.)

In March 2009 Cobb saw Dr. Rochelle Hawkins for a consultative examination. Dr. Hawkins examined Cobb for 34 minutes, noting that Cobb presented with arthritis and a pinched nerve in her spine that irritated the bottoms of her feet. (Id. at 202.) Cobb also complained of arthritic pain and burning sensations when walking. (Id.) Cobb told Dr. Hawkins that she took Naprosyn and Tylenol to manage her pain, describing her daily

2

pain as a 9 out of 10, but she also informed Dr. Hawkins that she had not undergone any physical therapy or taken pain injections. (Id. at 202-03.) She indicated to the doctor that she lived at home and performed her daily living activities without difficulty. (Id. at 202.) Dr. Hawkins observed that Cobb's upper and lower extremities were normal; there was no evidence of any joint swelling or limitation on joint or spinal movement; Cobb demonstrated strong grip strength and a normal ability to perform fine and gross manipulations; and her gait was normal and unassisted. (Id. at 203-04.) Based on her examination, Dr. Hawkins concluded that Cobb was able to sit, stand, and walk, and lift, carry, and handle objects. (Id. at 205.) The following month, in April 2009, Cobb sought emergency treatment for swelling and pain in her right foot caused by a fall. (Id. at 214-16.) X-rays revealed that Cobb suffered a fracture of her fifth metatarsal bone. (Id. at 223-26.)

Soon thereafter, Dr. Victoria Dow, a state agency physician, completed a Physical Residual Functional Capacity Assessment. (Id. at 227-34.) Dr. Dow acknowledged Cobb's complaints of a pinched nerve in her spine and low back pain, but also noted that x-rays of Cobb's lumbar spine and feet showed minimal degenerative changes. (Id. at 234.) Dr. Dow reported that Cobb exhibited a normal gait and demonstrated normal strength and range of motion of all her joints, including her lumbar spine. (Id.) She concluded that although Cobb's complaints were "partially credible"—the x-rays revealed that minimal degenerative changes in her lumbar spine were evident and her treating physicians prescribed her pain medication—Cobb's allegations regarding the severity of her limitations were not supported by the evidence. (Id.)

In November 2009 Cobb sought treatment for a pinched nerve in her spine and for arthritic pain in her knees that radiated to her feet. (Id. at 240, 285.) She also reported numbness and neck pain that radiated down her left arm. (Id. at 238, 240, 285.) An x-ray of Cobb's cervical spine revealed degenerative changes from C4 through C7 with the degenerative disc disease most pronounced at the C4/C5 and C6/C7 levels. (Id. at 281-82.) When the hospital discharged Cobb, her treating physicians documented diagnoses of cervical joint disease and plantar fasciitis—inflamation of the thick tissue on the bottom of the foot—recommending physical therapy and that she continue to take her pain medications. (Id. at 239-41.)

The following year, in May 2010, Cobb sought treatment at the pain clinic of Stroger Hospital, complaining of constant and radiating low back and neck pain that worsened with movement. (Id. at 269-70.) She reported that she experienced partial relief when she took pain medication, which included Tramadol, Naproxen, and Diclofenac. (Id. at 268, 270, 278.) Consistent with Cobb's November 2009 x-ray, a cervical spine x-ray revealed degenerative joint disease at C4/C5 and C6/C7. (Id. at 272.) The clinic diagnosed Cobb with myofascial or chronic pain. (Id.) A cervical MRI in June 2010 confirmed multilevel degenerative changes at C4/C5 and C5/C6 and moderate bilateral neural foraminal stenosis at C5/C6, but also noted no spinal canal or neural foraminal stenosis other than at the C5/C6 level. (Id. at 289-90.)

**B.      Cobb's Hearing Testimony**

At the hearing before the ALJ, Cobb testified that she has experienced back problems since 2000. (A.R. 28.) After the doctors diagnosed her with arthritis in her knees, heels, and feet, she tried to continue working, but after a day's work, she could no longer stand because of the pain. (Id.) Cobb stated that her foot pain was so severe that she could not walk to the train station and required assistance to get home. (Id.) Cobb testified that she feels as if her bones are "cracking" and that her knees "lock up" to the extent that she sometimes cannot move them. (Id.) According to Cobb, when she wakes up in the morning, she must sit on the side of her bed for 30 minutes to give her feet and legs time to "start functioning." (Id. at 29.) She also experiences constant, radiating pain through her legs that lasts through the night, pain that she says makes her feel like she is "constantly jumping." (Id. at 30.) She testified that she is unable to sit or stand for too long and that if she stands or walks for too long, the balls of her feet are in so much pain that she has to balance on her tiptoes. (Id.) Cobb testified that she also experiences numbness in her hands and constant neck pain, stating that sometimes the pain is so severe she cannot move her neck at all. (Id. at 29-30.)

Cobb testified that on a typical day, after she awakens, she waits 30 minutes for her legs to start functioning. (Id. at 29.) She then makes coffee and toast and takes her medication. (Id.) Pursuant to her doctors' advice, she walks around the block to prevent her legs from "lock[ing] up." (Id.) After the walk, she rests, takes her medication, and then takes another walk. (Id.) After that walk, Cobb waits for her daughter to make her dinner. (Id.) Cobb also testified that she works at her church about an hour a day, one to two days a week, assisting with its finances. (Id. at 27-28.)

C.     **The ALJ's Decision**

After considering the proffered evidence, the ALJ concluded that Cobb is not disabled.  In evaluating Cobb's claim, the ALJ applied the standard five-step sequential inquiry for determining disability, which required him to analyze:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner], *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (quoting *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995)).  If the ALJ finds at step three that the claimant has a severe impairment that does not equal one of the listed impairments, he must "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" before moving on to step four.  20 C.F.R. § 404.1520(e).  A claimant's residual functional capacity ("RFC") is the "most [she] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).  The ALJ then uses the RFC to determine at steps four and five whether the claimant can return to her past work or different available work in the national economy.  20 C.F.R. § 404.1520(e)-(g).  The claimant bears the burden of proof at steps one through four, but if the claimant meets that burden, the burden shifts to the Commissioner at step five.  *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). There, the Commissioner must demonstrate that the claimant—in light of her age, education, job

experience and RFC to work—is capable of performing other work and that such work exists in the national economy.  20 C.F.R. § 404.1520(g).

The ALJ made the following findings: (1) Cobb had not engaged in substantial gainful activity since the alleged onset date; (2) her back and knee pain constitute severe impairments; (3) these impairments do not individually or collectively meet or medically equal any of the listings; (4) Cobb has the physical RFC to perform the full range of medium work; and (5) based on this RFC, she can perform her past relevant work as a mail sorter or prep cook.  (A.R. 13-20.)  Based on these findings, the ALJ concluded that Cobb is not disabled as defined by the Social Security Act, and denied her benefits.  (Id. at 19-20.)

## Analysis

In her motion for summary judgment, Cobb challenges the ALJ's decision in three respects.  She first contends that the ALJ erroneously assessed her RFC when he concluded that she is able to perform the full range of medium work.  Cobb claims that the ALJ ignored relevant medical evidence, including significant evidence that is favorable to her claim of disability.  Cobb next challenges the ALJ's credibility determination, asserting that the ALJ failed to provide sufficient reasoning for his assessment of her credibility.  Finally, Cobb argues that the ALJ erred at step four when he applied an incorrect legal standard in determining whether she can perform her past relevant work.

This court confines its review to the reasons offered by the ALJ, *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)), and examines whether the ALJ's decision is supported by substantial evidence, *O'Connor-*

*Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). This court may not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford*, 227 F.3d at 869. But remand is warranted if the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review," *Steele*, 290 F.3d at 940, or fails to "provide an accurate and logical bridge between the evidence and the conclusion that the claimant is not disabled," *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (internal quotation marks omitted).

## A. The ALJ's RFC Finding and His Consideration of the Medical Evidence

The ALJ concluded that Cobb has the RFC to perform the full range of medium work.[1] (A.R. 17-19.) Cobb claims that this finding is deficient for several reasons. According to Cobb, the ALJ failed to explain what evidence he relied on when he concluded that she is able to perform work at the medium level of exertion. Cobb also faults the ALJ for failing to provide the narrative discussion required by SSR 96-8p and to consider evidence that favored her claim of disability. The court agrees with Cobb on all counts.

In evaluating a claimant's RFC, an ALJ must consider all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3),

---

[1] Medium work entails "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

416.945(a)(3).   Under SSA regulations, the ALJ must do more than simply list or acknowledge the relevant evidence.  Rather:

> [t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.   The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7.  Absent from the ALJ's opinion is any discussion of how the ALJ reached his conclusion that Cobb can perform medium level work.

In his opinion, the ALJ recounted Dr. Hawkins's findings.   (A.R. 18-19.) Dr. Hawkins's report noted that she saw no evidence of joint swelling or limitation on joint or spinal movement.  (Id. at 204.)  Dr. Hawkins also observed that Cobb's upper and lower extremities were normal, she demonstrated strong grip strength and a normal ability to perform fine and gross manipulations, and she had a normal and unassisted gait.  (Id.)  Based on her brief examination, Dr. Hawkins concluded that Cobb was able to sit, stand, and walk, and lift, carry, and handle objects.  (Id. at 205.)  But Dr. Hawkins's opinion is not a sufficient basis for the ALJ's conclusion that Cobb can perform the full range of medium work. Dr. Hawkins did not opine as to how much weight or how frequently Cobb is able to lift. And Dr. Hawkins did not opine as to how long Cobb is able to sit, stand, or walk.  There is no evidence in Dr. Hawkins's report that she tested Cobb's ability to lift heavy objects so that

9

report cannot be a legitimate basis for the ALJ's conclusion that Cobb is capable of lifting up to 50 pounds. Nor is it a sufficient basis to conclude that Cobb is capable of the standing or walking that would be required for medium level work.

To support his conclusion regarding Cobb's ability to perform medium level work, the ALJ cited the following evidence: (1) an April 6, 2009 clinic report that he characterized as indicating nothing more than an ankle sprain; (2) a November 10, 2009 cervical spine x-ray that failed to reveal any evidence of fracture or dislocation; and (3) a May 3, 2010 evaluation that diagnosed myofascial pain, but noted otherwise normal findings. (Id. at 19.) But this medical evidence does not suggest that Cobb has the ability to perform the full range of medium work.[2] Accordingly, absent from the ALJ's opinion is a "narrative discussion describing how the evidence supports" the RFC finding. SSR 96-8p, 1996 WL 374184, at *7; *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Briscoe v. Barnhart*, 425 F.3d 345, 352-53 (7th Cir. 2005). The ALJ failed to explain how he reached his conclusion about Cobb's physical capabilities when he determined that Cobb is able to perform medium, instead of light or heavy work.[3] This deficiency warrants remand.

---

[2] Included in the record is a physical RFC assessment with specific functional limitations from Dr. Victoria Dow. (A.R. 227-34.) The ALJ's opinion does not rely on or even reference this opinion. (Id. at 13-20.) The Commissioner—bound by the reasoning in the ALJ's decision, *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010)—does not rely on Dr. Dow's opinion in defending the ALJ's RFC assessment. Accordingly, the court confines its review to the evidence relied on by the ALJ.

[3] Light work entails "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). Heavy work involves "lifting no more than 100 pounds at a time with frequent lifting or

Cobb also finds fault with the ALJ's decision because it only discusses evidence undermining her claim of disability while ignoring medical evidence that favors her claim. In particular, Cobb cites the ALJ's failure to discuss the medical evidence documenting her cervical degenerative joint disease, the various problems associated with her C4/C5 and C5/C6 vertebrae, the degenerative arthritis of her cervical and lumbar spine, and her plantar fasciitis. The Commissioner does not dispute that the ALJ's decision lacks discussion of this evidence but defends it by arguing that the ALJ is not required to address every piece of evidence so long as a reviewing court can follow the path of the ALJ's reasoning. While true, the ALJ's opinion fails even in this regard. Although an ALJ need not address every piece of evidence so long as he builds a logical bridge from the evidence to his conclusion, an ALJ may not "cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (per curiam) ("In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments . . . and may not dismiss a line of evidence contrary to that ruling.").

In sum, the ALJ's opinion fails to provide a logical bridge between the evidence and the RFC conclusion. It is also unclear whether the ALJ considered the entire record, including Dr. Dow's RFC assessment. Because the ALJ's decision fails to permit an

carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567(d), 416.967(d).

11

informed review, a remand is required. *See Scott*, 647 F.3d at 740 (finding no logical bridge where ALJ did not "explain how she reached her conclusions about Scott's physical abilities"); *Terry v. Astrue*, 580 F.3d 471, 476-77 (7th Cir. 2009) (concluding remand appropriate where ALJ's determination that Terry could perform sedentary work was unsupported by any evidence); *Zurawski v. Halter*, 245 F.3d 881, 888-89 (7th Cir. 2001) (remanding where ALJ's decision "offer[ed] no clue as to whether she *examined* the full range of medical evidence as it relate[d] to [Zurawski's] claim") (emphasis in original).

## B.   Credibility

Cobb next claims that the ALJ failed to properly analyze her credibility as required by SSR 96-7p. She first argues that the ALJ erred by using the boilerplate language regarding credibility repeatedly criticized by the Seventh Circuit. Cobb further contends that the ALJ failed to sufficiently examine her testimony, the factors that aggravate her pain, her daily activities, and the effectiveness of the medication she takes to alleviate her pain. She finally contends that the ALJ appeared to give too much weight to her current ability to work.

This court affords an ALJ's credibility determination "considerable deference," overturning it only when it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (internal quotation marks omitted). This determination is entitled to such deference because it is recognized that the ALJ, having had the opportunity to observe the claimant testify, is in a "better position" to evaluate credibility. *Briscoe*, 425 F.3d at 354. But where the credibility determination is based on objective rather than subjective considerations, the reviewing court has greater freedom to review the ALJ's finding. *Craft*,

539 F.3d at 678. In either case, the ALJ must connect his credibility determination to the record evidence by an "accurate and logical bridge." *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010) (internal quotation marks omitted).

SSR 96-7p sets forth a two-step process for evaluating symptoms, such as pain. 1996 WL 374186, at *2. First, the ALJ must consider whether there is "an underlying medically determinable physical or mental impairment" that could "reasonably be expected to produce the individual's pain or other symptoms." *Id.* Second, if there is such an underlying physical or mental impairment, the ALJ "must evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.* If a claimant's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must "make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.* To build the required logical bridge for a credibility determination, SSR 96-7p requires that the ALJ consider not only the objective medical evidence, but also the claimant's daily activity; the duration, frequency, and intensity of pain; any precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; and any other functional limitations or restrictions. *Id.* at *3; *accord Villano*, 556 F.3d at 562-63. Moreover, the ALJ's written decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the

13

individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at

*2; *see also Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003).

Here, the ALJ did not build the required logical bridge between the evidence and his

determination of Cobb's credibility. To start, the ALJ began his assessment of Cobb's

credibility by reciting language that the Seventh Circuit has consistently criticized as "even

worse" than "meaningless boilerplate." *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir.

2012). The ALJ stated:

> Clearly, after careful consideration of the evidence, the undersigned finds that,
> while the claimant's medically determinable impairments could reasonably be
> expected to cause the alleged symptoms, the statements made concerning the
> intensity, persistence and limiting effects of those symptoms are not credible
> to the extent they are inconsistent with the above residual functional capacity
> assessment.

(A.R. 19.) Such language "gets things backwards": "[d]oubts about credibility [are] critical

to [the] assessment of ability to work, yet the boilerplate implies that the determination of

credibility is deferred until ability to work is assessed without regard to credibility."

*Bjornson*, 671 F.3d at 645-46. Although the ALJ's employment of such language does not

warrant automatic remand, *Lott v. Astrue*, No. 11 CV 5632, 2012 WL 5995736, at *9 (N.D.

Ill. Nov. 30, 2012), a remand is appropriate in this case because the ALJ's credibility

determination also fails to build the required logical bridge.

The ALJ's determination that Cobb's testimony and allegations of severe pain were

not credible rests on three grounds: (1) the objective medical evidence fails to demonstrate

the presence of impairments warranting her allegations of chronic, debilitating pain and

14

limited functionality; (2) Cobb's admission to Dr. Hawkins that she is able to live at home and perform her activities of daily living without difficulty; and (3) Cobb's ability to work at her church. (A.R. 18-19.)

An ALJ is not permitted to "disbelieve [a claimant's] testimony solely because it seems in excess of the 'objective' medical testimony." *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) (citation omitted). Here, the ALJ failed to explain why the medical evidence does not support Cobb's claims of disabling pain and limited functionality. At the hearing, Cobb testified that she experiences pain in her neck, knees, heels, and feet. (A.R. 28-30.) She described the limitations that result from the pain, which include, for example, her need to wait 30 minutes in the morning for her legs and feet "to start functioning" before she can walk, her inability to sit or stand for too long, her need to stand on her tiptoes to alleviate the pain in the balls of her feet from standing too long, and her inability to move her neck and do certain activities because of numbness she experiences in her hands. (Id.) Evidence in the record appears to support Cobb's allegations of pain. (Id. at 238-41, 247-49, 251-52, 254, 257, 260, 272, 281-82, 285, 289-90.) But as discussed above, the ALJ failed to discuss the evidence supporting Cobb's complaints, instead focusing on the evidence that seemingly contradicts her allegations of pain. The ALJ's failure to explain why he found Cobb's complaints of pain inconsistent with the available medical evidence amounts to reversible error. *See e.g.*, *Zurawski*, 245 F.3d at 887-88 (ALJ should have explained why claimant's testimony and complaints of pain were inconsistent with medical evidence).

But even if Cobb's allegations of pain and limitations are not fully supported by the objective medical evidence, because Cobb indicated that pain is a significant factor in her inability to work, the ALJ should have obtained a detailed description of her daily activities by asking specific questions about the pain and how it affects her. *See Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1999). The ALJ also should have considered the duration, frequency, and intensity of her pain; any precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication Cobb took; and any functional restrictions. *Id.*; *see also Villano*, 556 F.3d at 562-63. But the ALJ failed to analyze any of these factors.

When the ALJ asked Cobb at the hearing about her daily activities, Cobb testified that on a typical day, she eats a small breakfast, takes two short walks to prevent her legs from "lock[ing] up," and then waits for her daughter to arrive and prepare her dinner. (A.R. 29.) The ALJ obtained no further detail about Cobb's daily activities. The ALJ found noteworthy Cobb's admission to Dr. Hawkins that she is able to perform her activities of daily living without difficulty. (Id. at 19.) But to the extent that there is an inconsistency between Cobb's testimony about her limited daily activities and her statement to Dr. Hawkins that the ALJ thought significant, he should have attempted to resolve it. *Zurawski*, 245 F.3d at 887 ("The ALJ should have explained the 'inconsistencies' between Zurawski's activities of daily living . . . his complaints of pain, and the medical evidence."). For example, the ALJ could have asked Cobb to explain why her daily activities were so limited given her statement to Dr. Hawkins that she could perform them without difficulty. He could also have asked her why she told Dr. Hawkins she could perform her daily activities without difficulty when her

self-described pain is so severe. What's more, even if Cobb could perform the minimal daily activities she described, that does not necessarily undermine or contradict her claim of disabling pain. *See Clifford*, 227 F.3d at 872. Nor is her ability to perform those limited activities substantial evidence that she is capable of engaging in the full range of medium work as the ALJ found. *Id.*

The ALJ's credibility determination is also faulty because he failed to consider the record evidence indicating that Cobb took prescription medication—Diclofenac, Tramadol, and Naproxen (A.R. 258, 268, 270, 291)—to alleviate her pain, medication she described as working "sometimes" (id. at 29). *See* SSR 96-7p, 1996 WL 374186, at *3 (requiring consideration of dosage, effectiveness, and side effects of medication and treatment other than medication received for pain relief). Absent from the ALJ's opinion is any discussion about this pain medication or other treatment Cobb received—the record demonstrates that she sought treatment at the pain clinic—and how it affected his credibility determination.

Finally, the ALJ found noteworthy that at the time of the hearing, Cobb was able to work. (A.R. 19.) Cobb acknowledged that she works about an hour a day, one to two days a week at her church, assisting with the church's finances. (Id. at 27-28.) That fact, however, does not necessarily undermine Cobb's complaints of severe and disabling pain. While "the fact that [a claimant can] perform some work cuts against [her] claim that [she is] totally disabled," *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008), that Cobb can perform the type of non-physical work she described for short periods of time, one to two days a week, does not necessarily undermine her complaints of severe pain here, *see also*

*Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("[W]e are hard-pressed to understand how Jelinek's brief, part-time employment supports a conclusion that she was able to work a full-time job, week in and week out, given her limitations."); *Larson v. Astrue*, 615 F.3d 744, 752 (7th Cir. 2010) ("There is a significant difference between being able to work a few hours a week and having the capacity to work full time."). Nor does her very minimal, non-physical employment activity constitute substantial evidence that she is able to perform the full range of *medium* work. *See Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) ("[The ALJ] failed to consider the difference between [the claimant] being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week.").

The Commissioner defends the ALJ's credibility finding, arguing that the ALJ cited objective medical evidence that pointed to normal findings, thereby undermining Cobb's complaints of pain. As evidence that the ALJ properly found Cobb's complaints incredible, the Commissioner points to the ALJ's consideration of Cobb's limited treatment history, noting that since her March 2009 consultative examination with Dr. Hawkins, she "had not had any intervention, such as injections or physical therapy" to address her debilitating symptoms. (A.R. 16.) The ALJ also found significant that Cobb reported to an examining physician in May 2010 that she had no significant medical history. (Id. at 17.) But as discussed above, although the ALJ discussed certain medical evidence that pointed to normal findings, the ALJ failed to discuss the line of evidence that favored Cobb's claims of disability. Also, an ALJ may and should consider a claimant's treatment history. 20 C.F.R.

§ 404.1529(c)(3).  Here, the ALJ observed that Cobb's treatment for her pain appeared to be conservative and therefore inconsistent with her claimed-of pain levels.  But the ALJ failed to reconcile this observation with Cobb's taking of prescription pain medication, which he failed to discuss.  Nor to the extent that the ALJ's observation was inconsistent with Cobb's testimony regarding her pain did the ALJ question Cobb regarding her physicians' failure to prescribe, or her failure to undergo, additional pain therapy such as pain injections or physical therapy.  *See Zurawski*, 245 F.3d at 887-88.  The same holds true for the ALJ's observation regarding Cobb's May 2010 accounting to her examining physician, which he perceived as inconsistent with her allegations of pain.

In any event, even if these observations withstand scrutiny, the other aforementioned deficiencies in the ALJ's credibility determination warrant remand.  The ALJ employed the conclusory boilerplate the Seventh Circuit has consistently criticized, casting doubt on whether the ALJ evaluated Cobb's credibility independently.  This error is not harmless here because the ALJ also failed to analyze the SSR 96-7p credibility factors, including Cobb's testimony regarding her pain symptoms and the effectiveness of her pain medication.  Based on these shortcomings, the court cannot uphold the ALJ's credibility determination.  *See Villano*, 556 F.3d at 562-63.

## C.    Step Four

Cobb argues that in reaching his step four determination, the ALJ applied an incorrect legal standard.  The ALJ concluded that given her maximum RFC for medium level work, Cobb is capable of performing her past relevant work as a mail sorter or prep cook.  (A.R.

19

19.)  When discussing Cobb's RFC, the ALJ noted that Cobb's ability to currently work "is an indication that her ability to do any and all types of work has not been precluded."  (Id.) Cobb now claims that in light of her advanced age, her limited education, and history of unskilled to semiskilled jobs, if the ALJ had found that she was limited to work at the light exertional level, she is entitled to an award of benefits pursuant to the Medical-Vocational Guidelines, 20 C.F.R. § 404, Subpt. P, App. 2 (the "Grid").  Given the errors in the ALJ's finding that Cobb can perform medium work, the court has already concluded that a remand to reassess Cobb's RFC is necessary.  If on remand the ALJ finds that Cobb is limited to light work and not medium work, he will assess whether she is entitled to an award of benefits under the Grid.

## Conclusion

For the foregoing reasons, Cobb's motion for summary judgment is granted insofar as it requests a remand, and the case is remanded to the ALJ for further proceedings consistent with this opinion.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**

20